# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2829

_____

United States of America

*Plaintiff - Appellee*

v.

Dwight McTizic

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 16, 2020
Filed: August 27, 2020

_____

Before LOKEN, ARNOLD, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

A jury convicted Dwight McTizic of conspiring to violate federal health care laws and eleven substantive counts of health care fraud. McTizic appeals, arguing

there was insufficient evidence to support the jury's guilty verdict. We affirm the judgment of the district court.[1]

## I. Background

In July 2017, a grand jury returned an indictment, charging multiple people, including McTizic, with various crimes related to health care fraud involving AMS Medical Laboratory, Inc. ("AMS"), an entity that provided medical testing of blood, urine, and other specimens.

In part, the indictment alleged that in violation of federal anti-kickback legislation, 42 U.S.C. § 1320a-7b(b), AMS entered into contracts with other individuals and companies, under which AMS would pay a percentage of the money received from federal reimbursement programs (such as Medicare) for specimens referred for testing. One such arrangement was with True Care International Services, Inc. ("True Care"), a durable medical equipment provider operated at times by McTizic and his wife, Nicole. Between October 2013 and December 2015, AMS paid True Care and the McTizics over $114,000 in exchange for specimen referrals.

The government charged McTizic with one count of conspiring to defraud the United States in violation of 18 U.S.C. §§ 371 and 2 by accepting illegal kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1), defrauding a health care benefit program in violation of 18 U.S.C. § 1347(a), and making fraudulent statements in violation 18 U.S.C. § 1035. The government also charged McTizic with eleven substantive counts of health care fraud in violation of 18 U.S.C. §§ 1347(a)(2) and 2 related to specific transactions involving illegal kickbacks.

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

A jury trial ensued on the charges against McTizic and two other individuals. The jury convicted McTizic on all counts.

## II. Analysis

McTizic appeals, arguing there was insufficient evidence to meet the mens rea requirement for each of his convictions. As he sees it, he was nothing more than an inadvertent violator of the health care laws. We disagree.

"We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government, resolving conflicts in the government's favor and accepting all reasonable inferences that support the verdict." *United States v. Grimes*, 825 F.3d 899, 902 (8th Cir. 2016) (quoting *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003)). "[W]e will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *Id.* (quoting *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003)).

According to McTizic, because the criminal objectives of the charged conspiracy all require a heightened mens rea,[2] the government needed to establish he

---

[2]*See* 42 U.S.C. § 1320a-7b(b)(1)(A) (requiring the government establish that the defendant "*knowingly and willfully* solicit[ed] or receive[ed] any remuneration (including any kickback, bribe, or rebate) . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or part under a Federal health care program") (emphasis added);18 U.S.C. § 1347(a) (making it illegal to "*knowingly and willfully*" execute or attempt to execute a scheme to defraud a health care benefit program) (emphasis added); 18 U.S.C. § 1035(a) (making it illegal to "*knowingly and willfully*" engage in certain designated deceptive activities in connection with the payment for health care benefits) (emphasis added). The parties have not briefed and we have no reason to decide whether the use of "knowingly and willfully" has the same meaning

knew the conspiracy was unjustifiable and wrongful. *See United States v. Jain*, 93 F.3d 436, 440 (8th Cir. 1996) (affirming the district court's use of a jury instruction for a charged violation of 42 U.S.C. § 1320a-7b, which defined the word "willfully" as meaning "unjustifiably and wrongfully, known to be such by the defendant . . ."); *see also United States v. Calhoun*, 721 F.3d 596, 601 (8th Cir. 2013) ("Conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself." (quoting *Ingram v. United States*, 360 U.S. 672, 678 (1959))). McTizic argues the evidence presented at trial does not support such a conclusion, as his "conduct falls more in line with an inadvertent violator than someone [whose] conduct was unjustifiable and wrongful." Thus, McTizic claims, his conviction for conspiracy must be reversed. And if the conspiracy conviction is vacated, the convictions for individual instances of health care fraud — which were at least in part based on acts by co-conspirators[3] — must be reversed as well, either because he did not have the requisite intent to commit the fraud or because he no longer could be held responsible for the acts of the purported co-conspirators.

We reject McTizic's argument because, if for no other reason, we disagree with his characterization of the evidence as revealing he was nothing more than an inadvertent violator. To the contrary, the evidence in this case was sufficient to establish McTizic voluntarily and intentionally participated in the conspiracy with knowledge that his plan to receive kickback payments and defraud Medicare was unjustifiable and wrongful.

---

within each of the statutes. *See United States v. Jain*, 93 F.3d 436, 440 (8th Cir. 1996) (explaining "[t]he word 'willful' has many meanings and must be construed in light of its statutory context").

[3]*See Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946) (holding that an overt act in furtherance of the conspiracy by one member of a conspiracy is attributable to all other members of the conspiracy).

The government produced ample evidence that McTizic agreed to refer specimens to AMS in exchange for illegal kickbacks from money paid by a federal health care program. This included emails between McTizic and a representative of AMS, Anthony Camillo, in which they specifically discussed the fact that AMS would pay McTizic half of its profits from referrals paid for by Medicare or Medicaid. Camillo acknowledged these as the ultimate terms of the arrangement with McTizic. And the government also produced evidence AMS did in fact pay McTizic or his wife pursuant to such terms.

The government also showed that before negotiating this arrangement with AMS, McTizic had actively worked for, and served as an agent of, companies that were participants in the Medicare program. This prior experience in the industry led Camillo to believe McTizic would know that kickbacks were illegal. A juror might reasonably reach the same conclusion. Someone with significant experience working with Medicare is more likely than the average person to know about the prohibition against kickbacks.

But we need not decide whether McTizic's experience with Medicare alone is enough evidence to support the mens rea requirement. Additional evidence presented by the government gave further reason for the jury to conclude McTizic knew the arrangement was illegal. We have recognized that "[a] defendant's attempt to conceal his commission of a crime suggests that he knows the actions are wrongful." *United States v. Hiebert*, 30 F.3d 1005, 1007 (8th Cir. 1994). Here, when McTizic was questioned by a government official about the nature of the payments received from AMS, he falsely described the nature of the arrangement, claiming he received a flat fee for business referrals instead of per-specimen payments,[4] and failing to disclose

---

[4]The government considers certain "personal services and management contracts" legal when, among other conditions being met, "[t]he aggregate compensation paid to the agent over the term of the agreement is set in advance, is consistent with fair market value in arms-length transactions and is not determined

certain money AMS had paid to his wife. A reasonable jury could interpret this lack of candor with a government agent as an attempt to conceal the truth, and therefore as evidence McTizic knew his arrangement with AMS involved illegal kickbacks. *See United States v. Walker*, 818 F.3d 416, 422 (8th Cir. 2016) (explaining evidence a defendant lied to the IRS regarding the source and nature of kickback payments indicated the defendant had willfully attempted to evade paying his taxes).

Collectively, the evidence of McTizic's significant experience within the health care industry combined with his attempt to conceal the true terms of his agreement with AMS was enough for the jury to conclude he knew the arrangement was unjustifiable and wrongful when he knowingly became a part of the conspiracy.[5] We will therefore not disturb the jury's decision to convict McTizic.

### III. Conclusion

We affirm the judgment of the district court.

_____

in a manner that takes into account the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare, Medicaid or other Federal health care programs." 42 C.F.R. § 1001.952(d)(5).

[5]To convict McTizic of conspiracy, it was the government's burden to prove there was a conspiracy with an illegal purpose, McTizic was aware of the conspiracy, and he knowingly became a part of the conspiracy. *United States v. DuPont*, 672 F.3d 580, 583 (8th Cir. 2012). McTizic has not challenged the sufficiency of any of the other elements of the conspiracy charge, or the other substantive counts of health care fraud.